Charles H. Chevalier
Michael V. Caracappa
Christian Villatoro
**FBT Gibbons LLP**
One Gateway Center
Newark, New Jersey 07102-5310
cchevalier@fbtgibbons.com
mcaracappa@fbtgibbons.com
cvillatoro@fbtgibbons.com

*Attorneys for Plaintiff Xeris Pharmaceuticals, Inc.*

OF COUNSEL:

David P. Frazier
Kelly A. Welsh
Rozzi Upton
LATHAM & WATKINS LLP
555 Eleventh Street, NW, Suite 1000
Washington, DC 20004
(202) 637-2200

Marc N. Zubick
LATHAM & WATKINS LLP
330 North Wabash Avenue, Suite 2800
Chicago, Illinois 60611
(312) 876-7606

Sophia Lam
LATHAM & WATKINS LLP
1271 Avenue of the Americas
New York, New York 10020
(212) 906-1200

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| XERIS PHARMACEUTICALS, INC.,<br><br>Plaintiff,<br>v.<br><br>RISING PHARMA HOLDINGS, INC. d/b/a RISING PHARMACEUTICALS, and RISING PHARMA SPECIALITIES PVT. LTD.,<br><br>Defendants. | Civil Action No. 26-cv-13358<br><br>**COMPLAINT**<br><br>JURY TRIAL DEMANDED |

Plaintiff Xeris Pharmaceuticals, Inc. ("Xeris" or "Plaintiff"), by its undersigned attorneys, brings this action against Defendants Rising Pharma Holdings, Inc. d/b/a Rising Pharmaceuticals ("Rising Holdings") and Rising Pharma Specialties Pvt. Ltd. ("Rising Limited") (collectively, "Rising" or "Defendants") and hereby alleges as follows:

## NATURE OF THE ACTION

1. This is a civil action for patent infringement arising under the patent laws of the United States, 35 U.S.C. § 1, *et seq.*, and in particular under 35 U.S.C. § 271(b), to enjoin and obtain damages resulting from Defendants' unauthorized importation into the United States and use, sale, offer for sale, marketing, distribution, and promotion of products that infringe claim 1 of Xeris's United States Patent No. 12,758,502 (the "'502 Patent" or the "Asserted Patent").

2. Rising Holdings submitted Abbreviated New Drug Application ("ANDA") No. 218783 (the "Rising ANDA") to the United States Food and Drug Administration ("FDA"), seeking approval to manufacture and sell products that rely on data from bioavailability and/or bioequivalence studies contained in the approved labeling for Xeris's KEVEYIS®, dichlorphenamide 50 mg tablets for oral use product, prior to the expiration of the Asserted Patent.

3. The FDA approved ANDA No. 218783 on November 18, 2025. Following that approval, on information and belief, Rising has offered for sale and sold, or is preparing to offer for sale and sell, in the United States, dichlorphenamide 50 mg tablets for oral use (the "Rising ANDA Product"). On further information and belief, as of at least early 2026, the Rising ANDA Product has been available for ordering in commercial drug databases and pharmacy systems in the United States, and prescriptions for the Rising ANDA Product have been filled in the United States.

## KEVEYIS®

4. KEVEYIS® (dichlorphenamide) is the first FDA-approved medicine for the treatment of primary periodic paralysis ("PPP"), a rare and debilitating hereditary neuromuscular disease characterized by recurrent attacks of muscle weakness or temporary paralysis. PPP presents clinically as two principal subtypes: primary hyperkalemic periodic paralysis and primary

hypokalemic periodic paralysis. KEVEYIS® is an oral carbonic anhydrase inhibitor indicated for the treatment of both subtypes and related variants.

5. PPP imposes a substantial burden on patients, who may experience sudden and unpredictable attacks lasting minutes, hours, or days, with resulting morbidity and impaired quality of life. Because PPP is rare and clinically complex, patients may experience significant delays before receiving an accurate diagnosis. KEVEYIS® represented an important therapeutic advance for this underserved patient population.

6. On August 7, 2015, FDA approved New Drug Application ("NDA") No. 011366 for KEVEYIS® and granted KEVEYIS® orphan drug exclusivity, recognizing the critical unmet medical need for effective therapies for patients with PPP. Xeris is the holder of NDA No. 011366 for KEVEYIS®. Xeris markets KEVEYIS® (dichlorphenamide) in the United States pursuant to the KEVEYIS® NDA and Xeris continues to invest in its clinical development.

**PARTIES**

7. Plaintiff Xeris is a corporation organized and existing under the laws of the State of Delaware, with its corporate offices and principal place of business at 1375 W. Fulton St., Suite 1300, Chicago, Illinois 60607. Xeris discovers, develops, manufactures, and markets innovative pharmaceutical products to improve patient lives.

8. Xeris owns all rights, title, and interest in and to the Asserted Patent.

9. On information and belief, Defendant Rising Holdings is a corporation organized and existing under the laws of the State of Delaware, having its principal place of business at 2 Tower Center Blvd., Suite 1401A, East Brunswick, New Jersey 08816. On information and belief, Rising Holdings is a wholly owned subsidiary of Rising Limited. On further information and

belief, Rising Holdings holds any intellectual property rights and marketing authorizations for the Rising ANDA Product.

10. On information and belief, Defendant Rising Limited is a private limited company organized and existing under the laws of India, having its corporate headquarters at Level 18, Orbit by Auro Realty, 30/C, Hyderabad Knowledge City, Raidurg Panmaktha, Hyderabad, Telangana 500019, India. On information and belief, Rising Limited plays a crucial role in the production and supply of the Rising ANDA Product.

11. On information and belief, Rising Holdings and Rising Limited collaborate with respect to the development, regulatory approval, marketing, sale, and/or distribution of generic drug products for sale in the United States, including in New Jersey. On further information and belief, Rising Holdings and Rising Limited are agents of one another and/or operate in concert as integrated parts of the same business group and enter into agreements with each other that are nearer than arm's length.

12. The approved labeling for the Rising ANDA Product recites that it is manufactured by Aurobindo Pharma Limited (FEI No. 918917642) at a facility in India, and manufactured for Rising Pharma Holdings, Inc., East Brunswick, NJ. *See* FDA, Highlights of Prescribing Information at § 17, https://dailymed.nlm.nih.gov/dailymed/lookup.cfm?setid=35b9c81a-5062-451d-8b0c-1b599113aa6c [hereinafter the "Rising ANDA Product Approved Labeling"]. On information and belief, Defendants import the Rising ANDA Product into the United States, and thereafter directly or indirectly market, sell, and distribute the Rising ANDA Product throughout the United States, including in New Jersey.

13. On information and belief, Defendants are in the business of, among other things, developing, manufacturing, obtaining regulatory approval for, marketing, importing, distributing,

offering for sale, and selling pharmaceutical products, including dichlorphenamide tablets, throughout the United States, including in New Jersey.

14. On information and belief, Defendants act in concert with, and rely on material assistance from, one another and their affiliates, agents, and distributors to import, market, distribute, offer for sale, sell, and dispense the Rising ANDA Product in the United States, including in New Jersey.

15. On information and belief, and consistent with their practice with respect to other drug products, following FDA approval of ANDA No. 218783, Defendants have acted and continue to act in concert to import, market, distribute, offer for sale, and sell the Rising ANDA Product throughout the United States and within New Jersey.

16. Defendants know and intend that the Rising ANDA Product has been, is being, and will continue to be prescribed, dispensed, distributed, sold, and used throughout the United States, including in New Jersey, through established commercial channels and in accordance with the Rising ANDA Product FDA-approved labeling and Defendants' product-specific promotional and patient-support materials.

## JURISDICTION AND VENUE

17. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1338(a), 2201, and 2202.

18. This Court has personal jurisdiction over Rising Holdings because Rising Holdings has its principal place of business in New Jersey and has registered to do business with the State of New Jersey's Division of Revenue and Enterprise Services as a business operating in New Jersey under Business ID No. 0101051549. Rising Holdings has thus consented to personal jurisdiction in New Jersey.

19. This Court has personal jurisdiction over Rising Limited because, *inter alia*, Rising Limited has continuous and systematic contacts with the State of New Jersey, regularly conducts business in the State of New Jersey, either directly or through one or more of its wholly owned subsidiaries, agents, and/or alter egos, has purposefully availed itself of the privilege of doing business in the State of New Jersey, and sells the Rising ANDA Product in the State of New Jersey pursuant to the Rising ANDA.

20. Defendants derive substantial revenue from selling pharmaceutical products throughout the United States, including in this District, and from the sale of the Rising ANDA Product, and have availed themselves of the privilege of conducting business in New Jersey.

21. In the alternative, this Court has personal jurisdiction over Rising Limited in the State of New Jersey under Federal Rule of Civil Procedure 4(k)(2) because Rising Limited is not subject to jurisdiction in any state's courts of general jurisdiction and exercising jurisdiction over it is consistent with the United States Constitution and laws.

22. On information and belief, Defendants are licensed to dispense and sell generic and proprietary pharmaceutical products in the State of New Jersey, either directly or through one or more of their wholly owned subsidiaries, agents, and/or alter egos.

23. Defendants are in the business of manufacturing, marketing, importing, distributing, dispensing, and selling pharmaceutical drug products, including generic drug products, either directly or through subsidiaries, agents, and/or alter egos, which Defendants manufacture, distribute, market, and/or sell throughout the United States and in this judicial district.

24. Defendants have committed and continue to commit, aid, abet, induce, and/or participate in the commission of acts of patent infringement that have harmed and injured Xeris,

which manufactures and markets KEVEYIS® for sale and use throughout the United States, including in this judicial district.

25. Defendants know and intend that the Rising ANDA Product has been, is being, and will continue to be prescribed, dispensed, used, distributed, and sold in this District and throughout the United States through established commercial channels, including pharmacies and patient-support programs.

26. Defendants derive substantial revenue from the marketing, distribution, offer for sale, sale, and/or importation of pharmaceutical drug products, including generic dichlorphenamide products, in the United States.

27. On information and belief, Rising Holdings has offered for sale or sold the Rising ANDA Product in the State of New Jersey, lists the Rising ANDA Product on the State of New Jersey's prescription drug formulary, and seeks Medicaid reimbursements for sales of the Rising ANDA Product in the State of New Jersey, either directly or through one or more of its wholly owned subsidiaries, agents, and/or alter egos.

28. On information and belief, Rising Holdings knowingly distributes and sells, or intends to distribute and sell, the Rising ANDA Product in the State of New Jersey, which would displace sales of KEVEYIS® and cause injury to Plaintiff.

29. Rising Holdings regularly invokes the jurisdiction of the courts of this judicial district by pleading claims and counterclaims in pharmaceutical patent infringement actions and antitrust actions in this District. *See, e.g.*, *FFF Enterprises, Inc. v. Rising Pharma Holdings, Inc.*, No. 3:23-cv-20837, ECF No. 25 (D.N.J. Apr. 19, 2024); *Rising Pharma Holdings, Inc.*, No. 1:24-cv-01435, ECF No. 1 (D.N.J. Mar. 4, 2024). Rising Holdings has also not contested personal jurisdiction or venue in pharmaceutical patent litigation in this judicial district.

30. For at least the above reasons, exercising jurisdiction over Defendants would not be unfair or unreasonable because Defendants have purposefully availed themselves of the privilege of conducting business in the United States, including by launching or preparing to launch, marketing, distributing, offering for sale, and/or selling the Rising ANDA Product in the United States.

31. Venue is proper in this District under 28 U.S.C. §§ 1391(c), 1391(d), and 1400(b).

32. Venue is proper against Rising Holdings because, *inter alia*, it maintains a regular and established place of business in this District and has committed an act of infringement in this District.

33. Venue is proper against Rising Limited, a foreign corporation, in any judicial district that has personal jurisdiction, including this District.

## THE ASSERTED PATENT

**34.** On October 13, 2026, the United States Patent and Trademark Office ("USPTO") duly and legally issued the '502 Patent entitled "Compositions and Methods of Use." A true and correct copy of the '502 Patent is attached as **Exhibit 1**.

35. Xeris owns all rights, title, and interest in and to the '502 Patent.

36. Xeris timely submitted the '502 Patent to be listed in the *Approved Drug Products with Therapeutic Equivalence Evaluations* (an FDA publication commonly known as the "Orange Book") for KEVEYIS® (dichlorphenamide).

37. Claim 1 of the '502 Patent recites:

> A method of administering dichlorphenamide to treat primary hyperkalemic periodic paralysis or primary hypokalemic periodic paralysis in a human subject in need thereof, wherein the subject is also being administered famotidine for the treatment of a disease or disorder, the method comprising: discontinuing administration of the famotidine to the subject, and administering dichlorphenamide in tablet form to the subject at an initial dose of 50 mg, once or

twice daily, thereby avoiding concomitant administration of famotidine and dichlorphenamide to the subject.

38. KEVEYIS® is a product that falls within the ambit of claim 1 of the ’502 Patent. KEVEYIS® is sold and distributed in the United States with prescribing information that instructs healthcare providers, pharmacists, and/or patients according to the method of claim 1. In particular, the KEVEYIS® prescribing information states that KEVEYIS® “is indicated for the treatment of primary hyperkalemic periodic paralysis, primary hypokalemic periodic paralysis, and related variants,” and directs healthcare providers to “[i]nitiate dosing at 50 mg by mouth once or twice daily” in 50 mg tablet form. *See* FDA, Highlights of Prescribing Information at §§ 1, 2, https://dailymed.nlm.nih.gov/dailymed/lookup.cfm?setid=d30a87b9-90fb-35b2-e053-2995a90aea2c [hereinafter the “KEVEYIS® Prescribing Information”].

39. The KEVEYIS® Prescribing Information instructs healthcare providers, pharmacists, and patients that “dichlorphenamide is an inhibitor of OAT1 transporters,” that “[t]he concomitant administration of KEVEYIS may increase the plasma exposures of OAT1 substrates,” and that “[u]se of KEVEYIS with drugs that are sensitive to OAT1 inhibition (e.g., methotrexate, famotidine, oseltamivir) is not recommended.” *See* KEVEYIS® Prescribing Information at § 7.2. The KEVEYIS® Prescribing Information also directs healthcare providers to “[i]nstruct patients to notify their healthcare provider of all of the drugs and over-the-counter medications that they take.” *Id.* at § 17.

40. The above language provides a clear, affirmative instruction to healthcare providers and/or pharmacists about the danger of administering KEVEYIS® to patients taking famotidine and unequivocally instructs and encourages them to discontinue famotidine prior to administering KEVEYIS® and to instruct their patients accordingly in order to avoid that danger.

41. There is an actual case or controversy between the parties regarding Defendants' liability for their infringement of the '502 Patent.

**THE RISING ANDA PRODUCT**

42. The Rising ANDA Product Approved Labeling states that dichlorphenamide tablets are "indicated for the treatment of primary hyperkalemic periodic paralysis, primary hypokalemic periodic paralysis, and related variants," and directs healthcare providers to "[i]nitiate dosing at 50 mg by mouth once or twice daily." *See* Rising ANDA Product Approved Labeling at §§ 1, 2.

43. The Rising ANDA Product Approved Labeling expressly warns patients, healthcare providers, and/or pharmacists against the harmful effects of coadministration of dichlorphenamide and famotidine and instructs and encourages them to discontinue famotidine prior to administering dichlorphenamide. More specifically, the Rising ANDA Product Approved Labeling states that "dichlorphenamide is an inhibitor of OAT1 transporters" and that "[u]se of dichlorphenamide with drugs that are sensitive to OAT1 inhibition (e.g., methotrexate, famotidine, oseltamivir) is not recommended." *See* Rising ANDA Product Approved Labeling at § 7.2.

44. The Rising ANDA Product Approved Labeling further instructs patients to "notify their healthcare provider of all of the drugs and over-the-counter medications that they take." *See* Rising ANDA Product Approved Labeling at § 17. This instruction is particularly significant for famotidine, which is widely available over the counter, without a prescription, both as a generic drug and as the brand-name drugs Pepcid AC and Zantac 360. *See* Healthline, *Famotidine and Cost: What You Need to Know*, https://www.healthline.com/health/drugs/famotidine-cost. Because patients may purchase and take famotidine without a prescription, their famotidine use may not appear in their prescription records, and healthcare providers and/or pharmacists may learn of it only if patients disclose it. This instruction is intended to and in fact encourages patients

to tell their healthcare providers and/or pharmacists about all medications they take, including famotidine, so that healthcare providers and/or pharmacists can cease, and instruct patients to cease, administering drugs, like famotidine, prior to administering dichlorphenamide.

45. The "not recommended" labeling language in the Drug Interactions section of the Rising ANDA Product Approved Labeling is a clear, affirmative warning and instruction to healthcare providers and/or pharmacists to discontinue famotidine prior to administering dichlorphenamide, and to instruct their patients accordingly; that is, to practice the method of claim 1 of the Asserted Patent themselves and/or to direct and encourage their patients to do so.

46. The Rising ANDA Product Approved Labeling thus encourages, recommends, instructs, and/or promotes avoiding concomitant administration of famotidine and dichlorphenamide to patients with primary hyperkalemic periodic paralysis or primary hypokalemic periodic paralysis, in accordance with the method recited in claim 1 of the Asserted Patent. The Rising ANDA Product Approved Labeling is identical in this respect to the labeling for Xeris's branded KEVEYIS® product, and each Defendant knew or should have known that the Section 7.2 language would be understood by healthcare providers, pharmacists, and/or patients as an instruction to avoid concomitant use of famotidine and dichlorphenamide by ceasing administration of famotidine before administering dichlorphenamide.

47. Rising received final FDA approval for the Rising ANDA Product under ANDA No. 218783 on November 18, 2025. The Rising ANDA Product is supplied in bottles of 100 tablets under NDC 16571-242-01.

48. Rising Holdings filed a New Drug Introduction notification with the Vermont Attorney General's Office on or about March 4, 2026, which stated that Rising Holdings intended to introduce generic dichlorphenamide to the market on January 30, 2026, at a wholesale

acquisition cost ("WAC") of $25,628.07, with an estimated patient volume of 200. *See* https://ago.vermont.gov/sites/ago/files/2026-06/1st%20quarter%20drug%20report/3-3-26%20VT%20New%20Drug%20Introduction%20Pursuant%20to%2018%20V.S.A%20%C2%A7%204637(c)%20-%20Rising%20Pharma%20Holdings%2C%20Inc-%20Dichlorphenam.pdf.

49. Since approval of the Rising ANDA, Defendants have taken steps to commercialize the Rising ANDA Product in the United States, including listing the Rising ANDA Product in commercial drug pricing databases, including First Databank ("FDB"), Medi-Span, and other databases relied upon by payers, pharmacy benefit managers ("PBMs"), and pharmacies, at a substantial discount to the KEVEYIS® wholesale acquisition cost, and making the Rising ANDA Product available for ordering through pharmacy distribution channels.

50. On information and belief, Rising has or will enter into agreements with pharmacies for the distribution of the Rising ANDA Product. On further information and belief, Rising Holdings has established or is establishing distribution channels for the Rising ANDA Product in the United States, including through pharmacies, and has been offering the Rising ANDA Product for sale in the United States.

51. On further information and belief, prescriptions for the Rising ANDA Product have been dispensed in the United States. On information and belief, Rising Holdings has made or is making sales of the Rising ANDA Product in the United States.

52. The Rising ANDA Product Approved Labeling instructs patients and healthcare providers to report suspected adverse reactions by contacting "Rising Pharma Holdings, Inc. at 1-844-874-7464." *See* Rising ANDA Product Approved Labeling. On information and belief, Rising Holdings actively receives, processes, and reports adverse drug experiences from patients using the Rising ANDA Product to the FDA through the FDA Adverse Event Reporting System

("FAERS"). This ongoing patient and healthcare provider engagement confirms that Rising Holdings is not merely a passive distributor of the Rising ANDA Product but maintains active, ongoing contact with patients and healthcare providers regarding the use of its product, including regarding drug-drug interactions ("DDIs") and adverse reactions associated with dichlorphenamide therapy.

53. Defendants' conduct has caused and continues to cause substantial, concrete, and ongoing harm to Xeris through compendia pricing pressure. The listing of the Rising ANDA Product in drug pricing compendia establishes a generic reference price for dichlorphenamide that is substantially below the KEVEYIS® wholesale acquisition cost.

54. On information and belief, this compendia listing enables payers, PBMs, and pharmacy intermediaries to demand increased rebates, discounts, and price concessions from Xeris by pointing to the existence of a lower-priced generic alternative. The pricing pressure is transmitted through established formulary management and payer contracting mechanisms.

55. This compendia pricing harm is not speculative. Xeris has already experienced measurable revenue declines and unfavorable net pricing attributable to generic competition in the dichlorphenamide market. Specifically:

- KEVEYIS® net revenue declined in each of fiscal years 2024 and 2025;
- Xeris experienced unfavorable net pricing in fiscal year 2025;
- KEVEYIS® payer-covered tablets declined in each of 2024 and 2025; and
- Xeris has publicly disclosed that generic competition has already "adversely impact[ed]" its revenue. *See* Xeris Biopharma Holdings, Inc., Annual Report on Form 10-K for the Fiscal Year Ended December 31, 2025, at 50.

56. On information and belief, the Rising ANDA Product's wholesale acquisition cost is driven, according to Rising Holdings' own Vermont filing, "primarily by matching the current established generic WAC." This pricing strategy confirms that the Rising ANDA Product is positioned to function as a generic reference price in drug pricing compendia, exerting downward pricing pressure on KEVEYIS®.

57. On information and belief, the harm to Xeris from Defendants' compendia listing and market presence is immediate and ongoing. The existence of a listed generic at a substantial discount to the KEVEYIS® wholesale acquisition cost enables payers to extract price concessions that reduce Xeris's net revenue per tablet, even for patients who continue to receive branded KEVEYIS®. This competitive harm is compounded by the fact that KEVEYIS® serves an ultra-rare disease population, where even marginal per-tablet price erosion translates to significant aggregate revenue loss.

**DEFENDANTS' KNOWLEDGE OF THE ASSERTED PATENT**

58. On information and belief, Defendants have been aware of the Asserted Patent, and of the allowed claim issued therein, since at least June 11, 2026, when Xeris publicly announced that the USPTO had issued a Notice of Allowance with respect to U.S. Patent Application No. 17/151,405, entitled "Compositions and Methods of Use," the allowed claim of which covers the use of KEVEYIS® (dichlorphenamide), and Xeris announced that the allowed application was expected to issue as a U.S. patent and that Xeris would submit the patent to FDA for listing in the Orange Book for KEVEYIS®. *See* Xeris Biopharma, *Xeris Biopharma Announces Notice of Allowance From U.S. Patent and Trademark Office for New Patent Covering KEVEYIS®* (June 11, 2026), https://xerispharma.com/news-releases/news-release-details/xeris-biopharma-announces-notice-allowance-us-patent-and.

59. On information and belief, Defendants are aware of, and monitor, Xeris's patent portfolio and patent activity relating to KEVEYIS® and dichlorphenamide, because Defendants collectively develop, manufacture, supply, market, and/or sell dichlorphenamide products relying on KEVEYIS® as the reference listed drug, and because the Asserted Patent is or will be listed in the Orange Book for KEVEYIS®. Defendants are sophisticated pharmaceutical companies that routinely monitor the patent landscape for their marketed products, including by reviewing Orange Book listings, patent office publications, and competitor press releases.

60. Further, Xeris, through its counsel, sent a notice letter dated October 13, 2026, to Rising, attached as **Exhibit 2**. The letter informed Rising of the Asserted Patent, set forth the asserted claim, and alerted Defendants that their continued making, using, selling, offering for sale, importation, marketing, distribution, and promotion of the Rising ANDA Product in accordance with the product's labeling and promotional materials induces infringement of at least claim 1 of the Asserted Patent.

61. To the extent additional notice is required, Defendants have knowledge of the Asserted Patent no later than the date of filing and service of this Complaint.

62. Despite receiving the notice letter described above, Defendants have not ceased marketing, distributing, promoting, or selling the Rising ANDA Product, have not sought to modify their labeling or promotional materials to remove or alter the Section 7.2 language, and have not otherwise taken any steps to avoid infringement of the Asserted Patent. Defendants' continued sale and promotion of the Rising ANDA Product with knowledge of the Asserted Patent and in the manner described herein demonstrates Defendants' specific intent to induce infringement of claim 1 of the Asserted Patent.

**COUNT I – INDUCED INFRINGEMENT OF THE ASSERTED PATENT**

63. Xeris restates, realleges, and incorporates each of the preceding paragraphs as if fully set forth herein.

64. Defendants have made, used, offered for sale, sold, marketed, distributed, and/or imported the Rising ANDA Product in the United States, and continue to do so.

65. The Rising ANDA Product is a dichlorphenamide 50 mg tablet indicated and labeled for the treatment of primary hyperkalemic periodic paralysis, primary hypokalemic periodic paralysis, and related variants.

66. The Rising ANDA Product Approved Labeling recommends, instructs, and/or encourages healthcare providers and/or pharmacists to prescribe, dispense, and administer the Rising ANDA Product for treatment of primary hyperkalemic periodic paralysis, primary hypokalemic periodic paralysis, and related variants, and to initiate dosing at 50 mg by mouth once or twice daily.

67. The Rising ANDA Product Approved Labeling further recommends, instructs, and/or encourages healthcare providers, pharmacists, and/or patients to avoid concomitant administration of dichlorphenamide and famotidine by stating that use of dichlorphenamide with OAT1-sensitive drugs, including famotidine, is not recommended and by instructing patients to notify healthcare providers of all drugs and over-the-counter medications they take.

68. The provision concerning the dangers of coadministration of famotidine and dichlorphenamide is, and is intended to be, a specific warning to healthcare providers, pharmacists, and/or patients instructing them to stop administering famotidine before administering dichlorphenamide. Defendants intend this warning to be effective and to provide immunity from certain tort claims by virtue of its effectiveness.

69. Healthcare providers and/or pharmacists have directly infringed, are currently directly infringing, and will continue to directly infringe claim 1 of the Asserted Patent by using the Rising ANDA Product in accordance with the Rising ANDA Product Approved Labeling and in accordance with the pharmacy counseling described below, to administer dichlorphenamide tablets to treat primary hyperkalemic periodic paralysis or primary hypokalemic periodic paralysis in human subjects who are also being administered famotidine, including by discontinuing famotidine and administering dichlorphenamide in tablet form at an initial dose of 50 mg once or twice daily, thereby avoiding concomitant administration of famotidine and dichlorphenamide. In each such instance, the healthcare provider and/or the pharmacist has performed or caused, and performs or causes, the performance of each step of claim 1: the pharmacist and the patient act at the behest of the healthcare provider and in accordance with the healthcare provider's prescription, directions, and instructions; and/or the patient and the healthcare provider act at the behest of the pharmacist and in accordance with the pharmacist's drug utilization review determination, consultation, counseling, and instructions. Where the healthcare provider directs the course of treatment, the steps performed by the pharmacist and the patient in carrying out the healthcare provider's directions are attributable to the healthcare provider, and the healthcare provider is therefore liable as the direct infringer of claim 1. Where the pharmacist directs the course of treatment, the steps performed by the healthcare provider and the patient in carrying out the pharmacist's directions are attributable to the pharmacist, and the pharmacist is therefore liable as the direct infringer of claim 1.

70. Alternatively, patients have directly infringed, are currently directly infringing, and will continue to directly infringe claim 1 of the Asserted Patent by discontinuing famotidine and administering dichlorphenamide in tablet form at an initial dose of 50 mg once or twice daily to

treat primary hyperkalemic periodic paralysis or primary hypokalemic periodic paralysis, thereby avoiding concomitant administration of famotidine and dichlorphenamide. Patients perform, have performed, and will perform those steps because they are directed, instructed, counseled, and/or encouraged to do so by the healthcare provider and/or the pharmacist, who are in turn directed, instructed, and encouraged to so counsel and instruct the patient by Defendants through the Rising ANDA Product Approved Labeling.

71. Xeris pleads the foregoing theories of direct infringement in the alternative, and the theories are not mutually exclusive. Under each theory—whether the direct infringer is the healthcare provider and/or the pharmacist, or the patient acting at the direction, instruction, and encouragement of the healthcare provider and/or the pharmacist—every step of claim 1 of the Asserted Patent has been performed, is currently being performed in the United States, and will continue to be performed, and Defendants knowingly and with specific intent have induced, currently induce, and will continue to induce that direct infringement.

72. Defendants have induced, are currently inducing, and will continue to induce infringement of claim 1 of the Asserted Patent under 35 U.S.C. § 271(b). Defendants knowingly and with specific intent direct, instruct, and encourage healthcare providers, pharmacists, and/or patients to use the Rising ANDA Product in the manner described above, under each theory of direct infringement set forth above, and the Rising ANDA Product Approved Labeling has induced, is currently inducing, and will continue to induce such infringement. Defendants' inducement is accomplished through distinct but complementary channels, as set forth below.

73. Defendants' infringement of the Asserted Patent has been and continues to be deliberate and willful, undertaken with knowledge of the Asserted Patent and without a reasonable

basis to believe that the Rising ANDA Product and its use as directed by Defendants' labeling, promotional materials, and pharmacy arrangements do not infringe claim 1 of the Asserted Patent.

74. By including the Section 7.2 Drug Interaction language on the Rising ANDA Product Approved Labeling, Defendants knowingly cause DDI information regarding famotidine and other OAT1-sensitive drugs to be loaded into automated pharmacy drug utilization review ("DUR") systems nationwide. On information and belief, these computerized DUR systems are standard at retail and specialty pharmacies and have been in universal use since the 1990s. When a pharmacist enters a prescription for the Rising ANDA Product for a patient whose medication profile includes famotidine, the DUR system automatically generates a DDI alert based on the Section 7.2 language.

75. Pharmacists dispensing the Rising ANDA Product are required by federal and state law to conduct prospective drug utilization review before each prescription is dispensed, which includes screening for drug-drug interactions. *See* 42 U.S.C. § 1396r-8(g)(2)(A). Pharmacists are further required to offer to counsel patients on, among other things, "common severe side or adverse effects or interactions and therapeutic contraindications that may be encountered, including their avoidance, and the action required if they occur." *Id.* § 1396r-8(g)(2)(A)(ii)(I). New Jersey likewise requires that "[u]pon receipt of a new or refill prescription, a pharmacist shall examine the patient's profile record either in a manual or electronic data processing system before dispensing the medication, to determine the possibility of a potentially significant drug interaction, reaction or misutilization of the prescription." N.J.A.C. § 13:39-7.21. "Upon determining a potentially significant drug interaction, reaction or misutilization, the pharmacist shall take the appropriate action to avoid or minimize the problem, which shall, if necessary, include consultation with the patient and/or the prescriber." *Id.*

76. On information and belief, pharmacists at retail and specialty pharmacies who dispense the Rising ANDA Product currently and routinely detect the drug-drug interaction between dichlorphenamide and famotidine through automated DUR alerts, and upon detecting such interaction, take action including contacting the prescribing healthcare provider, counseling the patient, and/or declining to dispense until the interaction is resolved. This pharmacist conduct—screening for the DDI, alerting the healthcare provider, and encouraging and instructing discontinuation of famotidine prior to initiation of dichlorphenamide—constitutes the current practice of the method recited in claim 1 of the Asserted Patent by the pharmacist and/or the healthcare provider, with the patient and the healthcare provider acting at the behest of the pharmacist and/or the patient and the pharmacist acting at the behest of the healthcare provider. In the alternative, the patient currently practices the method of claim 1 by discontinuing famotidine and administering dichlorphenamide as directed and encouraged by the healthcare provider and/or the pharmacist.

77. On information and belief, Defendants know and specifically intend that the Section 7.2 Drug Interaction language on their label has been, is being, and will continue to be loaded into pharmacy DUR systems and has triggered, is triggering, and will continue to trigger legally mandated pharmacist action regarding the famotidine interaction. State pharmacy DUR regulations are public law, DUR systems have been standard automated pharmacy practice since the 1990s, and Rising (a pharmaceutical manufacturer that distributes into all 50 states) necessarily knows that its label's DDI content has generated, generates, and will continue to generate alerts requiring pharmacist action upon dispensing. The Rising ANDA Product Approved Labeling is not passive text; it functions as a regulatory signal that Rising knowingly deploys into a system it knows has converted, is converting, and will continue to convert that signal into compelled

downstream conduct by pharmacists, healthcare providers, and/or patients constituting the claimed method.

78. Under federal law, Rising is required to "promptly review all adverse drug experience information obtained or otherwise received by the applicant from any source, foreign or domestic, including information derived from commercial marketing experience." 21 C.F.R. § 314.80(b). FDA guidance further provides that "information concerning potential adverse experiences derived during planned contacts and active solicitation of information from patients (e.g., company-sponsored patient support programs, disease management programs) should be handled as safety" reports. *See* FDA, *Guidance for Industry — Postmarketing Adverse Experience Reporting for Human Drug and Licensed Biological Products: Clarification of What to Report* (Aug. 1997). On information and belief, Rising's pharmacovigilance obligations create a feedback loop through which Rising monitors whether the Section 7.2 Drug Interaction warning is being followed by healthcare providers, pharmacists, and/or patients, reinforcing Rising's knowledge that its label language causes healthcare providers, pharmacists, and/or patients to practice the DDI-avoidance method claimed in the Asserted Patent.

79. On information and belief, Rising made no attempt to "skinny label" under 21 U.S.C. § 355(j)(2)(A)(viii) to omit the Section 7.2 Drug Interaction language from the Rising ANDA Product Approved Labeling. Rising's volitional retention of the Section 7.2 language—with knowledge that it would be loaded into pharmacy DUR systems and trigger legally mandated pharmacist action regarding the famotidine interaction—supports an inference that Rising intended healthcare providers, pharmacists, and/or patients to practice the DDI-avoidance method recited in claim 1 of the Asserted Patent.

80. On information and belief, Rising independently benefits from healthcare providers, pharmacists, and/or patients following the Section 7.2 Drug Interaction warning. When a healthcare provider and/or pharmacist discontinues famotidine, or directs the patient to discontinue famotidine, before dichlorphenamide is administered in accordance with the DDI warning, no adverse drug interaction occurs, no adverse event is reported, Rising faces no product liability exposure, and Rising's federal preemption defense under *PLIVA, Inc. v. Mensing*, 564 U.S. 604 (2011), remains intact. Rising cannot credibly claim it is agnostic about whether healthcare providers, pharmacists, and/or patients follow the DDI warning when Rising's own legal and financial interests depend on their compliance with that warning.

81. Rising's inducement of infringement through the foregoing conduct has been, is currently, and will continue to be knowing and intentional, with specific intent to cause healthcare providers, pharmacists, and/or patients to practice the method recited in claim 1 of the Asserted Patent, which they have done, are currently doing, and will continue to do.

82. The pharmacies designated for distribution of the Rising ANDA Product are required to conduct prospective drug utilization review and counsel patients on drug-drug interactions when dispensing the Rising ANDA Product, including the interaction between dichlorphenamide and OAT1-sensitive drugs such as famotidine.

83. Pharmacists are required by federal and state law to screen for and counsel patients on drug-drug interactions when dispensing the Rising ANDA Product. Pharmacists must conduct a prospective drug utilization review before each prescription is dispensed, which includes screening for drug-drug interactions, including serious interactions with over-the-counter drugs. *See* 42 U.S.C. § 1396r-8(g)(2)(A). Pharmacists are also required to offer to counsel patients on, among other things, "common severe side or adverse effects or interactions and therapeutic

contraindications that may be encountered, including their avoidance, and the action required if they occur." *Id.* § 1396r-8(g)(2)(A)(ii)(I). New Jersey likewise requires that "[u]pon receipt of a new or refill prescription, a pharmacist shall examine the patient's profile record either in a manual or electronic data processing system before dispensing the medication, to determine the possibility of a potentially significant drug interaction, reaction or misutilization of the prescription." N.J.S.A. § 45:14-1 *et seq.*; N.J.A.C. § 13:39-7.21. "Upon determining a potentially significant drug interaction, reaction or misutilization, the pharmacist shall take the appropriate action to avoid or minimize the problem, which shall, if necessary, include consultation with the patient and/or the prescriber." *Id.* New Jersey further requires that before dispensing a new medication, a pharmacist shall make reasonable efforts to counsel the patient on "[c]ommon adverse or severe side effects or interactions and contraindications that may be encountered, including how to avoid such side effects, interactions and contraindications, and the action required if they occur." N.J.A.C. § 13:39-7.21(a)(4). Because famotidine is widely available over the counter and its use may not appear in a patient's prescription records, pharmacists dispensing the Rising ANDA Product must counsel patients on the need to cease taking famotidine before initiating dichlorphenamide in order to satisfy these screening and counseling obligations.

84. These federal and state legal requirements ensure that pharmacists screen for and counsel patients taking the Rising ANDA Product on the drug-drug interaction between dichlorphenamide and famotidine when dispensing the Rising ANDA Product, and, on information and belief, pharmacists are currently doing so, and these pharmacy arrangements serve as a channel through which Defendants direct, instruct, and encourage healthcare providers, pharmacists, and/or patients to use the Rising ANDA Product in a manner that infringes claim 1 of the Asserted Patent.

85. Xeris has already suffered, and will continue to suffer, substantial competitive harm as a direct result of Defendants' entry into the market with generic dichlorphenamide products. In its SEC filings, Xeris disclosed that in November 2025, Rising Pharmaceuticals received FDA approval for a generic version of dichlorphenamide. *See* Xeris Biopharma Holdings, Inc., Annual Report on Form 10-K for the Fiscal Year Ended December 31, 2025, at 11, 50. Since approval of the Rising ANDA, Xeris has suffered and continues to suffer irreparable harm, including but not limited to loss of market share, price erosion, loss of goodwill and reputation, loss of revenue needed to fund research and development, loss of business opportunities, and loss of its position as the sole supplier of dichlorphenamide for patients with PPP.

86. The harm to Xeris extends beyond the revenue declines already experienced. Xeris has disclosed that "competition from generic equivalents to our products or product candidates could substantially limit our ability to generate revenues and therefore to obtain a return on the investments we have made in our products or product candidates." *See* Xeris Biopharma Holdings, Inc., Annual Report on Form 10-K for the Fiscal Year Ended December 31, 2025, at 50. Every patient diverted to the Rising ANDA Product represents both an immediate loss of revenue and a diminished ability to fund continued investment in patient identification, pharmacy support services, and the ongoing development programs that Xeris maintains for this vulnerable patient population. The irreparable nature of this harm is compounded by the difficulty of recapturing patients once they have been switched to a competing generic product in the ultra-rare disease setting, where physician relationships and pharmacy infrastructure are critical to maintaining market position.

87. Unless Defendants are enjoined from actively inducing infringement of the Asserted Patent, Xeris will continue to suffer irreparable injury. Xeris has no adequate remedy at

law, the balance of hardships favors Xeris, and the public interest would be served by the entry of a permanent injunction.

88. Xeris has suffered and will continue to suffer monetary damages, including but not limited to lost profits and/or a reasonable royalty, as a result of Defendants' infringement of the Asserted Patent.

**COUNT II – INFRINGEMENT OF THE ASSERTED PATENT UNDER 35 U.S.C. § 271(E)(2)**

89. Plaintiff restates, realleges, and incorporates each of the preceding paragraphs as if fully set forth herein.

90. In the alternative, and in addition to the claims set forth in Count I, Rising Holdings submitted ANDA No. 218783 to the FDA seeking approval to engage in the commercial manufacture, use, and sale of the Rising ANDA Product, the use of which is claimed in the Asserted Patent, before the expiration of the Asserted Patent. The submission of ANDA No. 218783 constitutes an act of infringement under 35 U.S.C. § 271(e)(2)(A).

91. On information and belief, Rising Holdings' ANDA No. 218783 contains information demonstrating that the Rising ANDA Product is bioequivalent to Xeris's KEVEYIS®, the approved labeling for which references the method of use claimed in the Asserted Patent. The Rising ANDA Product Approved Labeling includes the Section 7.2 Drug Interaction language instructing that use of dichlorphenamide with OAT1-sensitive drugs, including famotidine, is "not recommended," thereby referencing the method of claim 1 of the Asserted Patent.

92. On information and belief, Rising Holdings and the other Defendants were actively involved in the preparation, submission, and prosecution of ANDA No. 218783, and/or will be involved in the commercial manufacture, marketing, distribution, and sale of the Rising ANDA Product upon and following approval.

93. To the extent a court determines that 35 U.S.C. § 271(e)(2) provides a basis for liability on these facts, Xeris is entitled to the remedies set forth in 35 U.S.C. § 271(e)(4), including an order that the effective date of approval of ANDA No. 218783 shall be a date which is not earlier than the expiration date of the Asserted Patent, and an injunction preventing Defendants from engaging in the commercial manufacture, use, offer to sell, or sale of the Rising ANDA Product until the expiration of the Asserted Patent.

## JURY TRIAL DEMAND

94. Xeris hereby demands a trial by jury on all issues triable as such.

## REQUEST FOR RELIEF

WHEREFORE, Xeris respectfully requests the following relief:

(a) A judgment that Defendants have induced, are currently inducing, and will continue to induce infringement of the Asserted Patent, and/or have infringed the Asserted Patent under 35 U.S.C. § 271(e)(2);

(b) A permanent injunction pursuant to, *inter alia*, 35 U.S.C. § 283 enjoining Defendants, their officers, agents, servants, employees, attorneys, affiliates, subsidiaries, successors, assigns, and all persons acting in concert with them, from making, using, selling, offering to sell, marketing, distributing, or importing the Rising ANDA Product, or inducing any of the foregoing;

(c) An order pursuant to 35 U.S.C. § 271(e)(4)(A) providing that the effective date of any approval of ANDA No. 218783 shall be a date which is not earlier than the expiration date of the Asserted Patent, including any extensions thereof;

(d) A judgment declaring that Defendants' making, using, offering to sell, selling, marketing, distributing, or importing the Rising ANDA Product actively induces infringement of

the Asserted Patent;

(e) An award of damages or other monetary relief adequate to compensate Xeris for Defendants' past, continuing, and future infringement, including lost profits and/or a reasonable royalty, together with pre-judgment and post-judgment interest, costs, and disbursements as justified pursuant to 35 U.S.C. § 284;

(f) A judgment that Defendants' infringement has been willful and an award of enhanced damages under 35 U.S.C. § 284;

(g) A declaration that this is an exceptional case and an award of attorneys' fees pursuant to 35 U.S.C. § 285;

(h) An award of Plaintiff's costs and expenses in this action; and

(i) Such further and other relief as this Court may deem just and proper.

Date: October 13, 2026

FBT GIBBONS LLP

/s/ Charles H. Chevalier
Charles H. Chevalier
Michael V. Caracappa
Magnolia S. Joodi
Christian Villatoro
One Gateway Center
Newark, New Jersey 07102
Phone: (973) 596-4701
Fax: (973) 639-6294
cchevalier@fbtgibbons.com
mcaracappa@fbtgibbons.com
cvillatoro@fbtgibbons.com

*Attorneys for Plaintiff Xeris Pharmaceuticals, Inc.*

OF COUNSEL:

David P. Frazier
Kelly A. Welsh
Rozzi Upton
LATHAM & WATKINS LLP
555 Eleventh Street, NW, Suite 1000
Washington, DC 20004
(202) 637-2200

Marc N. Zubick
LATHAM & WATKINS LLP
330 North Wabash Avenue, Suite 2800
Chicago, Illinois 60611
(312) 876-7606

Sophia Lam
LATHAM & WATKINS LLP
1271 Avenue of the Americas
New York, New York 10020
(212) 906-1200

*Attorneys for Plaintiff Xeris Pharmaceuticals, Inc.*